CAUSE NUMBER 2002-31310

DAVID WILSTEIN, et al.     :     IN THE DISTRICT COURT

v.                         :     HARRIS COUNTY, TEXAS

DERNICK RESOURCES, INC., : 
et al.                     :     164th JUDICIAL DISTRICT

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/6/2015 4:55:59 PM
CHRISTOPHER A. PRINE
Clerk

*************************************************

*SEPTEMBER 25, 2015*

*************************************************

On the 25th day of September, 2015, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

*A P P E A R A N C E S*

*FOR THE PLAINTIFFS:*
      Mr. Britton D. Monts, SBN 14033900
      THE MONTS FIRM
      P.O. Box 164287
      Austin, Texas   78716
      Telephone: 512-382-6092
      Facsimile: 512-579-0897


*FOR THE DEFENDANTS:*
      Mr. D. Patrick Long, SBN 12515500
      PATTON BOGGS, L.L.P.
      2000 McKinney Avenue, Suite 1700
      Dallas, Texas   75201
      Telephone: 214-758-1505
      Facsimile: 214-758-1550

*P R O C E E D I N G S*

*THE COURT:* We're on the record in Cause Number 2002-31310 -- goodness gracious. That's old. -- *Lakota Resources versus Pathex Petroleum*, and appearance for the record, Counsel.

*MR. MONTS:* Good morning, Judge. Britt Monts for the Wilsteins.

*MR. LONG:* Morning, Judge. Pat Long for defendants.

*THE COURT:* All righty. Now, I saw that I got my hand smacked, and apparently I did something wrong -- ooh, it happens. -- and I should've given you the 750 in the judgment.

*MR. MONTS:* Well, you were trying -- you were just being nice to the other side.

*THE COURT:* I was trying to be fair.

*MR. LONG:* I think she was making a considered judgment.

*THE COURT:* I thought I made a judgment, but sometimes the appellate court just doesn't -- just doesn't agree with me.

Hey, appellate court justices.

It's all right. It's all right.

*MR. MONTS:* Overall they did, and the way it was tried, it didn't require any kind of

remand. That's the great thing. They didn't have to calculate the interest and -- not have to send it back to you for anything. But, Your Honor, we're here this morning on two motions. They're pretty focused. One is really -- will be unnecessary, I think, should be unnecessary. The first motion is a motion to increase the supersedeas deposit --

THE COURT: Uh-huh.

MR. MONTS: -- under Texas Rule of Appellate Procedure 24.3. That rule gives the Court continuing -- the trial court continuing jurisdiction to increase the amount of the security during the appeal if circumstances change.

THE COURT: Uh-huh.

MR. MONTS: So there's no question that you -- you maintain jurisdiction for that purpose during the appeal. So by way of quickly -- just background, as you know, you signed a final judgment on July 9th of 2013. It went up on appeal to the First Court, and on -- I believe it was June the 30th of this year, they affirmed your judgment and modified it in part and signed a new judgment, which is Tab 1 --

THE COURT: Uh-huh.

MR. MONTS: -- in your notebook. So

essentially your judgment is still the judgment. It's just been modified by the Court of Appeals and increased by about $1.2 million. And so we have -- behind Tab 1 here you have the modified judgment from the Court of Appeals. So -- you can only have one judgment in a case at one time.

THE COURT: Uh-huh.

MR. MONTS: So the final judgment that you entered in July of 2013 has been modified by the Court of Appeals through a new judgment, and that is the -- that is the judgment in the case now.

Now, the problem with that is -- and if you'll look at -- Tab 4 kind of mathematically takes us through it. They put up the full amount of the original supersedeas under the applicable law for compensatory damages, and they put up two years of -- of interest on the judgment, but that was back -- effective as of July of 2013. We're more than two years past that.

THE COURT: Uh-huh.

MR. MONTS: And the judgment -- if you look at that sheet in blue that I've got for you --

THE COURT: Uh-huh.

MR. MONTS: You total up the numbers, the original supersedeas on the original judgment,

the additional amount the Court of Appeals modified and increased, and then I've added another year's judgment -- interest on the judgment because we're already several months past the two years they put up. And they've already said they're going to take a petition up to the Supreme Court, so we know we're looking at --

THE COURT: Somehow I'm not shocked.

MR. MONTS: No one's surprised. This -- this is one that just plays itself out, I guess, but -- but I think we all know that we're looking at probably another four to six months at least --

THE COURT: Uh-huh.

MR. MONTS: -- in the Supreme Court just to even deny a petition, the way things typically work. So when you add all that up, you see that the total amount that -- that is required now to fully supersede the judgment as it exists now, your --

THE COURT: Uh-huh.

MR. MONTS: -- your judgment, as modified -- and by the way, under -- under -- under decisions in Texas, when they reinstated that part of the verdict --

*THE COURT:* Uh-huh.

*MR. MONTS:* -- and added interest to it -- you have to go back and add post-judgment interest as of the date of your original judgment. So they basically modified your judgment, and so their judgment is the -- is the judgment that was entered now, as of July 9th of 2013.

*THE COURT:* Okay. What is -- what is this argument about the mandate?

*MR. MONTS:* Well --

*THE COURT:* There's no mandate?

*MR. MONTS:* Yeah. I mean, to me, the mandate is something completely different. Once the mandate comes down from either the Supreme Court or the Court of Appeals and is delivered to the clerk, we're not talking about supersedeas anymore. We're talking about "Pay up or, you know, we're coming after you." So I don't fully understand the issue of the mandate because they seem to be arguing that the modified judgment is tentative and it's not, in fact, the judgment of the Court. But there can only -- you can't have a -- you can't have a judgment and a tentative judgment at the same time. You can only have one judgment in a case, and the Court of Appeals has made clear that your judgment has been modified,

and that judgment is the judgment in the case.

So they have to supersede that judgment to stay enforcement with the numbers in that judgment. And when you run through the numbers, they're about 450,000 short now.

THE COURT: Okay. Well --

MR. MONTS: And we -- we ask that you require them, within -- you know, next ten days or so, to put that up.

THE COURT: You got a spare 450 you want to chuck into the registry real fast?

MR. LONG: I would prefer not to do that, Your Honor.

THE COURT: Uh-huh. Somehow I knew that. What's the deal with the mandate?

MR. LONG: Well, the -- the rule is very simple. Until the mandate is issued, this Court can't change the judgment, so the judgment that you can enforce is the judgment that was entered before the appeal.

THE COURT: Uh-huh.

MR. LONG: That's the law. If you get a mandate from the Court of Appeals saying we've either increased or decreased it -- once you get that mandate, then you have the ability -- you -- you keep

the ability to make that change, but the law is very clear. Until the mandate is issued, which deals with enforceability --

THE COURT: Uh-huh.

MR. LONG: And that's the key issue. Until that mandate is issued, this Court can't just say, "Okay. We've got a -- we've got an interim decision by the -- by the Court of Appeals," because we are going to take it up, "I'm going to increase," or, the other way around, "decrease it."

And I've got counsel that's helped me in this case, and I'm just going to hand this to the Court because this isn't -- this is -- what I'm telling the Court is, I think, pretty clearly the law. What I've got is -- I'll just hand the Court an article that was in the Advanced Civil Appellate Practice course by Professor Elaine Carlson. You may know her.

THE COURT: Uh-huh.

MR. LONG: She's probably considered the preeminent expert in this area.

THE COURT: I used to work for her 145 years ago, as I like to say, so yes.

MR. LONG: I've highlighted in red -- and it goes on to the next page. -- the rule of law

that I'm -- I'm just citing to the Court.  What Professor Carlson is saying is absolutely consistent with what we've got in our response, and I think that's the law.

THE COURT:  Wow.  That's a new one on me.

MR. MONTS:  I -- I don't think that's -- I don't think that really means what it's being asserted to be because, as I said, the modified judgment of the Court of Appeals is your judgment.

Your judgment, the way it was signed back in 2013, has been modified, and -- and it is your judgment, plus the additional verdict and interest that the Court of Appeals reinstated.  That is -- that is the judgment in the case.  So I think that you have to read it in light of:  What is the judgment?  And once you do that, you then have to supersede that judgment.  I think sometime --

THE COURT:  Did you read the rest of this, though?

MR. LONG:  Yes, I did.

THE COURT:  Not you.  Him.

MR. LONG:  Oh.

MR. MONTS:  I haven't -- I mean, I really haven't had the benefit of seeing it for more

than just a few seconds before we got up here so I haven't -- can't comment too much on it.

THE COURT: It kind of torpedoes your argument.

MR. MONTS: Mine?

THE COURT: Yep.

MR. MONTS: Well, let me see what part it is because I -- I just --

THE COURT: Start with the red, but then read after the red. I always read after. Read after --

MR. MONTS: In the footnote here?

THE COURT: No. Not in the footnote. On the next page.

MR. MONTS: Oh, next page.

THE COURT: Uh-huh.

MR. MONTS: Yeah. The trial court judgment. But my point is the trial court judgment at this point is your judgment, modified by the Court.

THE COURT: Keep on reading, where it says that doesn't apply until a mandate's issued; the mandate won't be issued until ten days after the expiration of the date to where they can complain to the Supreme Court or ten days after when the Supreme

Court says, "No.  I'm not going to take it up."

MR. MONTS:  The problem -- there -- there's an illogical -- there's a disconnect in that because they have to take a petition for review within 45 days --

THE COURT:  Uh-huh.

MR. MONTS:  -- of -- well, the rehearing was denied earlier this week, so they have 45 days to do that.

THE COURT:  Uh-huh.

MR. MONTS:  If they don't do that on time --

THE COURT:  Uh-huh.

MR. MONTS:  -- then obviously the mandate will issue back to the clerk, and we're -- we don't need to talk about supersedeas anymore at that point; it's over; we're just talking about collecting the money in the registry and then going after assets --

THE COURT:  Uh-huh.

MR. MONTS:  -- unless they give us a check.  So that's -- that's what the mandate causes. There won't be a mandate sent back if they take up a petition for review.

THE COURT:  I knew you were going to --

MR. MONTS: But how are they going to -- what judgment are they going to appeal without -- if -- if their position is that the Court of Appeals' modified judgment is not effective, what judgment are they going to take up to the Supreme Court?

THE COURT: I suspect the whole dad-gone thing, but -- okay. Yes.

MR. MONTS: But they -- but there can't be two judgments.

MR. LONG: He's complaining -- effectiveness versus enforceability. We're talking about effectiveness with supersedeas. It's not enforceable by this Court until the mandate's issued. It's just as simple as that.

THE COURT: Yeah. Okay. Denied. Next?

MR. MONTS: Do we have an order?

MR. LONG: Yes.

THE COURT: All right. Now you want a deposition and production of documents?

MR. MONTS: Well, that --

MR. LONG: That's moot now.

MR. MONTS: I mean, if your position is that the judgment doesn't need to be increased, the

supersedeas --

THE COURT:  Yeah.

MR. MONTS:  -- then we're not going to seek to enforce the judgment, if it's --

THE COURT:  That's my position.

MR. MONTS:  All right.  Thank you, Judge.

THE COURT:  Thanks.  Oh, here.  Take -- take that back with you.  Bring it back next time. See y'all in a couple weeks.

*(End of proceedings.)*

THE STATE OF TEXAS        )
                          )
COUNTY OF HARRIS          )


          I, Donna King Hammer, Official Court Reporter in and for the 164th Judicial District Court of Harris County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

          I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

          I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.

          WITNESS MY OFFICIAL HAND this, the 5th day of October, 2015.


                              *Donna King Hammer*
                              _____
                              DONNA KING HAMMER, CSR 6273
                              Expiration Date: 12/31/16
                              Official Court Reporter
                              164th Judicial District Court
                              Harris County, Texas
                              201 Caroline, 12th Floor
                              Houston, Texas  77002
                              (713) 368-6256